STATE OF MAINE

CUMBERLAND, ss.

STATE OF MAINE,

v.

SHAWN DEARBORN,

    Defendant.

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-07-136
WSB- CUM- 8/10/2007

DECISION

Defendant Shawn Dearborn has filed a motion to dismiss a previous 2003 conviction that enhances the habitual motor vehicle offense with which he is now charged. Mr. Dearborn first argued that he had not been advised of his right to a lawyer in 2003. However, at hearing on this motion on August 1, 2007, the official transcript of the 2003 conviction revealed that the District Court (Eggert, J.) did advise Mr. Dearborn of his right to a court appointed counsel and asked him if he wanted to go forward without an attorney. Joint Exhibit #1, page 3, lines 6-13.

As an alternative argument, Mr. Dearborn testified that the reason he did not ask for a court appointed lawyer in 2003 was that he had already pled guilty when he was advised he had a right to a lawyer. He did not realize that he could withdraw his guilty plea and therefore declined to exercise his right to a lawyer. Mr. Dearborn testified that had he known he could have withdrawn his guilty plea he would have asked for both a lawyer and a trial. He also claims that he had a defense to the 2003 case because he had not been properly notified of his revocation.

The 2003 transcript reveals that Mr. Dearborn was not in fact advised that he could withdraw his plea if he wished to ask for a lawyer to go to trial. He was asked by the sentencing judge if he wanted to go forward without an attorney but he was not advised that he could go backwards.

The rules expressly require that the judge at the initial proceeding inform a defendant that he has a right to a court appointed counsel (if eligible, as Mr. Dearborn was), and that he must be allowed a reasonable time and opportunity to consult counsel <u>before</u> entering a plea. M.R. Crim. P. 5(b)(2). Mr. Dearborn was not advised of his right to counsel until after he had pled guilty and he was not advised that he could step backwards. There is no reason to disbelieve Mr. Dearborn's testimony that he did not understand that he could withdraw his guilty plea so he thought it was too late for an attorney.

There is also no evidence in the record that Mr. Dearborn was advised of the maximum and minimum penalties, as required by M.R. Crim. P. 5(c)(1), or his right to a jury trial, as required by M.R. Crim. P. 5(c)(2). Mr. Dearborn testified that there was no lawyer for the day in 2003 and there is no evidence to the contrary. It is also unclear what, if anything, was said to the defendants as a group at the 2003 arraignment, but even if there had been an introductory message by video, *State v. Rowell*, 468 A.2d 1005 (Me. 1983), makes clear that group instructions are not sufficient. *Id.* at 1007.

The State may point to *State v. Mahoney*, 2001 ME 140, 785 A.2d 699, and *State v. Cook*, 1998 ME 40, 706 A.2d 603, as precedent for allowing uncounseled misdemeanor convictions to enhance either the class of a subsequent charge (*Mahoney*) or the minimum sentence of a subsequent charge (*Cook*). However, both *Mahoney* and *Cook* involve uncounseled but <u>constitutional</u> prior convictions. In the instant case, I am satisfied that the prior conviction was unconstitutional because the trial judge's constitutional advisements to Mr. Dearborn were incomplete to the point where they were ineffective.

Any waiver of the right to counsel must be knowing, voluntary and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 81 (2004). At a plea hearing, the Sixth Amendment requires

that the accused be informed of (a) the nature of the charges, (b) the right to be counseled regarding the plea, and (c) the range of punishment. *Id.* at 81.

Mr. Dearborn was informed of the nature of the charges but he was not informed of the range of punishments or informed, before pleading guilty, that he had a right to be counseled regarding the plea.

The State could well argue that *Tovar* states that the trial court must inform defendants of their rights "before accepting a guilty plea." *Id.* at 81. However, *Tovar* also states that the adequacy of the warnings will be case specific and will vary from situation to situation. Unlike the defendant in *Tovar*, Mr. Dearborn has "articulated with precision the additional information counsel could have provided." *Id.* at 92-93. Counsel would have told Mr. Dearborn that he could withdraw his plea before it is accepted.

"States are free to adopt [any] . . . rule . . . they deem useful" regarding pleas. *Id.* at 94. The Maine Supreme Judicial Court has codified by rule the requirement that defendants be advised of their right to consult counsel <u>before</u> entering a plea. M.R. Crim. P. 5(b)(2). When a jail sentence is involved and a defendant pleads guilty, the trial court must insure that the defendant understands that he or she has a right to withdraw the plea and consult with counsel, either appointed or not, before entering a plea. This case illustrates why M.R. Crim. P. 5(b)(2) reads as it does. Mr. Dearborn did not realize that he could withdraw his plea of guilty prior to acceptance. There is no reason why a non-educated person would realize that.

The trial court's failure to advise Mr. Dearborn fully of his right to counsel and his right to withdraw his plea and consult counsel, arising as it does in a case where Mr.

3

Dearborn was also not personally advised of his right to a jury trial,[1] makes his 2003 conviction both unconstitutional and a violation of M.R. Crim. P. 5(b)(2).

For the above-stated reasons, the clerk will make the following entry by reference:

Defendant's motion to dismiss is granted. The reference in the indictment to the 2003 conviction is ordered deleted.

DATED:     August 10, 2007

_William S. Brodrick_
William S. Brodrick
Active-Retired Justice, Superior Court

---

[1] Mr. Dearborn has not raised the jury trial instruction as an issue in this case but the U.S. Supreme Court decisions appear to suggest that when deciding whether a guilty plea is constitutionally deficient, the judge should consider all of the circumstances surrounding each case. *See, e.g., Tovar* at pp. 92-93.